# THE GRAND ISLAND AND NORTHERN WYOMING RAILROAD COMPANY v. BAKER, TREASURER, ETC., ET AL.

RESERVED QUESTIONS — LIMITATIONS UPON COUNTY INDEBTEDNESS — LIMITATIONS UPON COUNTY TAXATION — WHAT JUDGMENT AGAINST COUNTY CONCLUSIVE OF — CONFESSION OF JUDGMENT BY COUNTY BOARD.

1. In the decision of reserved questions arising upon a demurrer, it is not the duty of the court to pass upon the demurrer or to direct the ruling to be made upon the pleadings, but its jurisdiction is limited to a decision upon the certified questions.

2. A county already indebted to an amount equal to or exceeding two per centum upon the assessed value of the taxable property therein, is powerless to create any debt in excess of the taxes for the current year. If the existing indebtedness is less than two per cent., then it can not create a debt in excess of the taxes for the current year without first submitting the same to a vote of the people and thereby securing their approval. (Const., Art. 16, Secs. 3 and 4.)

3. Salaries of officers are within the constitutional limitations upon the creation of county indebtedness.

24

4.  Bounties for the destruction of predatory wild animals pro-
vided for by the act of 1893 are within the constitutional
limitations upon county indebtedness as against collateral
attack by the county or a taxpayer thereof.

5.  A judgment against a county is conclusive upon the ques-
tion of the validity of the debt on which it is founded.

6.  To raise a fund to pay salaries and valid liabilities for boun-
ties for the destruction of wild animals, a county tax in excess
of twelve mills (the maximum constitutional limit upon the
annual tax for county revenue) in any year is not authorized
unless the debt therefor has been created in the manner pro-
vided in the constitution and statutes by a county with power
to incur such indebtedness.

7.  The public debt, to pay which a county is authorized to levy
taxes in addition to the twelve mills allowed for county revenue,
is not within the meaning of the constitutional provision, con-
fined to bonded indebtedness, but may include ordinary war-
rants and other lawfully issued evidences of indebtedness, and
also judgments, but does not necessarily embrace all out-
standing warrants, evidences of indebtedness, or judgments.

8.  County indebtedness which has been created in excess of
the taxes of the current year with the consent and approval
of the people, and which, together with other existing indebt-
edness does not exceed the amount within which the county
may lawfully become indebted, although evidenced alone by
warrants, will constitute a part of the public debt, and its
payment may be provided for by a tax in addition to the lim-
ited county revenue tax of twelve mills.

9.  Indebtedness for ordinary current expenses incurred in
excess of the taxes for the current year without the con-
sent or approval of the people, or with such consent if the
maximum debt limit has already been reached, although such
indebtedness may be evidenced by judgments, is not a part of
the public debt within the meaning of the constitutional pro-
vision, excepting the payment of the public debt from the
limit upon ordinary county taxation (Art. 15, Sec. 5); and to
pay the same a tax in excess of a tax of twelve mills for county
revenue is unauthorized.

10.  The constitution limiting annual taxation for county reve-
nue for all purposes, exclusive of State revenue, to twelve
mills, "except for the payment of its public debt and the
interest thereon," to determine whether a judgment comes
within the exception, and whether a county may levy a tax in

excess of the twelve-mill limitation to pay such judgment, recourse must be had to the character of the original claim.

11. For the purpose of determining the power of a county, under constitutional or statutory limitations, to levy taxes to pay a judgment, the latter partakes of the same character as the original claim upon which it is founded.

12. The statutory provision requiring a judgment against a county to be paid by tax (R. S., Sec. 1798) does not contemplate a tax in excess of constitutional or statutory limitation.

13. A county is not authorized to levy a tax for the maintenance of the district court in addition to a levy of twelve mills for county revenue.

14. A judgment in favor of a land owner for damages recovered in a proceeding to determine the compensation to be paid him by reason of the exercise of the right of eminent domain in locating, constructing, and opening a public road through his land, is payable out of the ordinary county revenue; and to pay such judgment a tax in excess of twelve mills for county revenue is not authorized.

15. The board of county commissioners can not confess a judgment against the county, nor authorize an attorney to do so.

[Decided June 30, 1896.   Commenced in the district court April 8, 1896.]

RESERVED questions from the District Court for Crook County, Hon. WILLIAM S. METZ, Judge.

This was an action brought by the Grand Island and Northern Wyoming Railroad Company against the treasurer and ex-officio collector of taxes, and the Board of the Commissioners of the county of Crook, to enjoin the collection of certain taxes levied in the year 1895. The material facts are stated in the opinion.

*Burke & Fowler* and *N. K. Griggs* for plaintiff.

It was clearly the intention of the people in adopting the constitution to place the public business upon a cash basis, so far as relates to current expenses, and to limit such expenses, so far as they are to be paid by the county, to the revenue to be derived from a twelve-mill levy. (Const. Art. 15, Secs. 5, 13; Art. 16, Secs. 2, 3, 4.)

This view is that adopted by the legislature. (Laws 1893, Ch. 33, Sec. 1; Laws 1895, Ch. 106.) A legislative construction, though not conclusive, is entitled to great weight. (Jackson v. Board, 34 Neb., 680.) In construing the term "public indebtedness," it is proper to consider the situation existing at the time the constitution was adopted, and to thus arrive at the evident meaning of the term as then used. (Morgan v. Cross, 46 Vt., 787.) No other county indebtedness existed except that which was then or afterward funded. Legislative authority must be shown for every levy of taxes. (Cooley Const. Lim. 101, 133, 641, 642; Ex parte Schmidt, 2 Tex. Civ. App., 196; Sutherland Stat. Const., 365; Desty on Tax'n., Sec. 41; City v. Raley, 32 S. W., 183; Lake Co. v. Rollins, 130 U. S., 662; Guthrie v. Bank (Okl.), 38 Pac., 5.) The tax to pay a judgment must be within the constitutional limit. The law does not permit that to be done indirectly which may not be done directly. (Osborne Co. v. Blake, 25 Kan., 247; State v. Marion Co., 21 id., 319; City v. Edwards, 84 Ill., 632: Supervisors v. U. S., 18 Wall., 71; Board v. King, 67 Fed., 202; R. R. Co. v. York Co., 7 Neb., 487; R. R. Co. v. Buffalo Co., 9 id., 449; R. R. Co. v. Dawson Co., 12 id., 255; Hebard v. Ashland Co., 55 Wis., 145; R. R. Co. v. Clayton Co., 13 Neb., 367; State v. Weir, 33 id., 35; Cumings v. Fitch, 40 O. St., 56; Cleveland v. Heisley, 41 id., 670: People v. Scott, 9 Colo., 422; People v. May, id., 80; Trull v. Board, 72 N. C., 391; Buchanan v. Litchfield, 102 U. S., 278; French v. Board, 74 N. C., 692; Weightman v. Clark, 103 U. S., 256; State v. Co., 14 Neb., 42; In re House Roll, 31 id., 505; Young v. Lane (Neb.), 62 N. W., 202; Mfg. Co. v. Harvey, 45 Ia., 466; Shackelton v. Guthrie, 39 N. J. L., 660; Appeal of Erie, 91 Pa. St., 398; Board v. Board, 107 N. C., 110; Ellerton L. Co. v. Mayor, 89 Ala., 477; Arnold v. Hawkins, 95 Mo., 569; Black v. McGonigle, 103 id., 189; Wright v. R. R. Co., 120 Ill., 541; R. R. Co. v. Board, 47 Kan., 722; People v. State Board, 20 Colo., 220; Desty on

Taxation, Vol. 2, pp. 1069–1077; Law v. People, 87 Ill., 386.) The foregoing authorities are also cited upon the proposition that the term "public indebtedness" as used in Sec. 5 of Art. 15 of the constitution, refers to indebtedness existing at time of adoption of the constitution, and not to unpaid current expenses contracted afterward.

The attack upon the judgments in this case is not strictly a collateral attack upon them, but is made for the purpose of determining the validity of tax levied to pay them. The several judgments were rendered upon warrants and certificates of indebtedness, and they could not be used as a claim against the county except in mandamus to compel a tax for their payment. (2 Desty 1075; Cooley on Taxation, 737–8; Robinson v. Supervisors, 43 Cal., 353.) The whole transaction from the auditing of the claims including the entry of judgment upon them was contrary to law and wholly void, the debts exceeding the limit. (Board v. State, 18 Neb., 523 ; Taxing Dist. v. Loague, 129 U. S., 493; Cody v. Board, 10 Neb., 29; Stewart v. Otoe Co., 2 id., 177; Christie v. Supervisors, 60 Cal., 164; Jeinfer v. Co., 2 Disney, 189; Wessel v. Weir, 49 N. W., 785; State v. Lincoln Co., 18 Neb., 283.) The Board of County Commissioners have no authority to confess judgments against the county. Judgments rendered without jurisdiction are void. (Ex parte Sawyer, 124 U. S., 124; Risley v. Bank, 83 N. Y., 318; Paul v. Willis, 69 Tex., 269; 12 Ency. L., 147; Board v. King, 67 Fed., 202.) A judgment by confession can only be entered upon a strict compliance with the statute. (Black on Judg., 50–2; Howell v. Mfg. Co., 32 Neb., 627.)

*J. L. Stotts*, County Attorney, and *M. Nichols* for defendant.

Bonded indebtedness is not the only class coming within the meaning of the term "public debt." (State v. Hickman, 11 Mont., 541; People v. May, 9 Colo., 80; id., 404; Law v. People, 87 Ill., 385; Gray v. Bennett, 3 Metc., 526.)

A judgment rendered against a county by a competent court is an existing and outstanding indebtedness which must be paid in the manner provided for the payment of such judgments. And it is not necessary to go further in the argument of this matter, so far as it relates to judgments already rendered, that the railway company can not attack the judgments in this manner, and that the judgments having been rendered by the district court, until reversed or set aside in a regular way, stand as an obligation against the county and must be paid by a levy of taxes. And if the board of county commissioners had refused to make the levy, mandamus would lie to compel them to do so. (Cooley on Taxation, 138; R. S., Sec. 1798.)

It seems to us that the limitation 'of twelve mills for county revenue was to prevent the board of county commissioners from incurring indebtedness by extravagant or reckless management. But the salary of an officer is not an indebtedness of the county which is created by the county board. (State vs. Weir, 33 Neb., 35.)

Salaries are not within the provision limiting public indebtedness. (Welch v. Strother, 74 Cal., 413; 23 Pac. 740; Grant Co. v. Lake Co., 17 Or., 453.) The presumption is that a judgment against a county is for a valid subsisting outstanding obligation, and when so rendered is binding upon the county. And on mandamus to compel levy of a tax to pay the judgment it can not be attacked. (People v. Board (Colo.) 42 Pac., 1032.) The judgments were not rendered on confession, but the county was brought into court, in each instance, in the regular way.

The county under Sec. 3, Art. 16 of the constitution, as we interpret it, may in any year create a debt of two per cent.; and if any of it remains unpaid it becomes a part of the public debt which may be paid by a tax in excess of twelve mills.

*J. F. Hoop* and *R. H. Vosburgh* appeared in the interests of Sheridan and Weston Counties respectively,

and submitted briefs contending for the same propositions as maintained in the brief for defendant, and citing the same authorities.

*Chester B. Bradley* appeared amicus curial.

POTTER, JUSTICE.

Plaintiff filed its petition in the district court for Crook County, praying for an injunction against the collection of a portion of the taxes levied in that county for the year 1895. A demurrer was interposed, and upon the hearing thereof the court ordered the cause to be reserved to this court for its opinion upon certain questions certified to be important and difficult.

In the year 1895 the board of county commissioners of the county of Crook levied the following taxes:

| | |
|---|---|
| General Revenue | 10 mills. |
| General County School | 2 " |
| Judgment Tax | $3\frac{1}{4}$ " |
| Court House and Jail Bonds | 2 " |
| Funding Bonds | $2\frac{1}{2}$ " |

amounting in the aggregate to $19\frac{3}{4}$ mills on the dollar. The only part of the levy complained of in this action, is the judgment tax of $3\frac{1}{4}$ mills, which is assumed to have been levied to pay certain judgments rendered against the county. The facts connected with the judgments are not, as the pleadings now stand, sufficiently disclosed to definitely indicate the precise nature of the claims entering into them. We are not informed by the pleadings, either as to the time when, or the court wherein, such judgments were secured. Inferentially it may appear that they were obtained since the admission of the State, and largely upon warrants issued in payment for current expenses of the county, since the adoption of the constitution. Indeed, the argument in this court was largely confined to the effect of judgments rendered upon warrants so issued, and the taxing power associated therewith, although the suggestion was advanced by counsel that for all which

appeared in the pleadings; funding bonds might have constituted the source of the judgments.

It would seem that no necessity exists for dispute upon the essential facts. It would have been more satisfactory, therefore, and would perhaps have narrowed the scope of our investigation, had the issues been fully made up, prior to the reservation to this court, so as to clearly and without cavil present the questions submitted by the learned court for our consideration.

It is not our duty, however, to pass upon the demurrer. Our jurisdiction is limited to a decision upon the certified questions, and we are not requested thereby to direct the ruling which should be made upon the present condition of the pleadings.

The judgment tax is charged to have been illegal and void, and levied without authority; that the same was not levied for the payment of the public debt of the county or the interest thereon; and the county had exhausted its power to levy taxes for general revenue purposes by a levy of the constitutional limit of twelve mills for such purposes in the year 1895, and each year theretofore since the organization of the State. It is attempted, also, to attack the judgments upon two grounds : First, that the alleged debts upon which they were obtained were void, as having been contracted, or the evidences of such indebtedness having been issued in excess of the limit upon county indebtedness established by the constitution ; second, that the said judgments were procured through the consent and confession of the board of county commissioners contrary to law.

The questions certified for our decision are as follows:

1. Is the levy of The Board of County Commissioners of the county of Crook of three and one fourth mills of judgment tax as set forth in plaintiff's petition, and the agreement of parties thereto attached, in excess of the limitation as fixed by the constitution and laws of the State of Wyoming ?

2. Separate and apart from each of the propositions herein made, is or is not the defendant entitled to judgment on its agreement with the plaintiff (Exhibit " A " plaintiff's petition), for the sum of $927.66 ?

3. For what purposes can a tax be levied by the board of the county commissioners in excess of the twelve mills limitation and under the term " Public Indebtedness and Interest thereon," as the term is used in Section 5 of Article 15 of the constitution ?

4. Can a tax in excess of twelve mills be levied by the board of the county commissioners for the payment of an indebtedness growing out of and by reason of the provisions of chapter 6 of the laws of 1893, entitled "An Act to Encourage the Destruction of Predatory Wild Animals"?

5. Can a tax in excess of twelve mills be levied by the board of the county commissioners for the purpose of paying warrants issued for salaries of county officers when the revenue of the county derived from taxation in previous years has not proved sufficient to defray its expenses, and such warrants are outstanding and unpaid for the want of sufficient funds?

6. Does the placing of warrants, issued for legitimate county expenses, into judgment, justify the board of the county commissioners in levying a tax in excess of twelve mills with which to pay the same?

7. In case judgment has been rendered in favor of a land owner for damages caused by the location, construction, and opening of a public road through his land, can a tax be levied to pay such judgment in excess of twelve mills provided by law to be levied for all county purposes, the revenue raised by the twelve-mill tax being all required and used for county purposes?

8. Has the board of the county commissioners authority and power under the constitution and laws of the State, to confess and authorize a confession of judgments against the county?

9. Can a judgment, rendered by the district court of Crook County having jurisdiction over the person and subject-matter, be attacked collaterally in this case?

10. Can not the board of the county commissioners levy the district court tax, for the maintenance of the court, in addition to the levy of twelve mills for county revenue?

The second question, viz., "Separate and apart from each of the propositions herein made, is or is not the defendant entitled to judgment on its agreement with the plaintiff (Exhibit "A," plaintiff's petition) for the sum of $927.66?" can not receive our consideration, for the reason that the facts do not sufficiently appear in the pleadings before us, to authorize a complete determination thereof upon the merits of the cause.

For the purpose of convenience, we propose to discuss the legal questions involved in the various questions, without, in general, a specific reference to any particular question, or the order in which they are presented. A majority of the certified questions do not admit of categorical answers. A careful elucidation of the views entertained by the court covering the subject-matters of the questions, ought to, and, we conceive, will, be sufficiently indicative of our opinion upon the questions themselves.

Involved in the questions thus submitted is the construction of the various constitutional provisions affecting the power of counties to incur indebtedness and levy taxes. The gravity of the interests which may depend upon a determination of these questions has not been underestimated, and with a keen appreciation of the responsibility resting upon the courts in such matters, it is only after studious and mature deliberation that we have arrived at our conclusions. Upon the argument much attention was devoted by counsel to the policy of the constitutional restrictions upon public indebtedness, and taxation; but the courts possess no control over matters of mere policy. If the people of the commonwealth by adopting a constitution have committed themselves to a mistaken policy, the only remedy is an

amendment, by constitutional methods, of that instrument. Within the province of the legislature, recourse must be had to that body for the correction of any errors of policy which may have induced its enactments. The jurisdiction of the courts extends only to the construction and enforcement of the constitution and laws as they exist. That jurisdiction should be zealously guarded, but not used as a cloak to encroach upon the functions of the other departments of government. The provisions of the constitution controlling the matters before us are as follows :

Article XV, Sec. 5. "For county revenue there shall be levied annually a tax not to exceed twelve mills on the dollar for all purposes including general school tax, exclusive of State revenue, except for the payment of its public debt and the interest thereon. An additional tax of two dollars for each person between the ages of twenty-one and fifty years, inclusive, shall be annually levied for county school purposes."

Article XVI, Sec. 3. "No county in the State of Wyoming shall in any manner create any indebtedness exceeding two per centum on the assessed value of taxable property in such county, as shown by the last general assessment, preceding; provided, however, that any county, city, town, village, or other subdivision thereof in the State of Wyoming, may bond its public debt existing at the time of the adoption of this constitution, in any sum not exceeding four per centum on the assessed value of the taxable property in such county, city, town, village, or other subdivision as shown by the last general assessment for taxation."

Article XVI, Sec. 4. "No debt in excess of the taxes for the current year shall, in any manner, be created by any county or subdivision thereof, or any city, town, or village, or any subdivision thereof, in the State of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."

Other provisions which may affect the construction to be given to the sections above quoted, will be referred to as we proceed.

We are to consider the power and authority of a county in this State, first. to create indebtedness, and second, to levy taxes.

Prior to the admission of Wyoming as a State municipal and county indebtedness in this as well as other territories was limited by congressional enactment to four per centum on the value of the taxable property within such corporation or county, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness. (Stat. 1st Sess. 49th Congress, Ch. 818, p. 171. Rev. Stat. Wyo.,1887, p. 39.) The language of that act is as follows: " That no political or municipal corporation, county, or other subdivision in any of the territories of the United States *shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness* exceeding," etc. Acknowledging this past limitation upon county indebtedness, the constitution expressly authorized the bonding of the public debt of any county in any sum within the congressional limit of four per cent. (Art. XVI, Sec. 3.) As a primary proposition it must be manifest that the framers of the constitution did not propose to afford vitality to any indebtedness incurred in excess of the limitation declared by Congress. In case any county had become so indebted, it was not permitted to issue bonds to pay such excess; and no other constitutional provision refers to it. This may become an important consideration. County indebtedness amounting to, but not exceeding, four per cent. on the assessed value of taxable property was therefore recognized as valid and enforceable; and as no limitation was placed by the constitution upon the power to levy taxes to pay the valid public debt of a county, means were allowed by which the same could be eventually satisfied. It is also clear that in authorizing the funding of county indebted-

ness in an amount not exceeding four per cent., all man-
ner of indebtedness, whether for imposed or voluntary
obligations, was understood to be included within the
congressional limitation, it being obvious that the inten-
tion was to permit the bonding of *all* legal and valid
debts existing at the time of the adoption of the constitu-
tion; and that it was not the purpose to repudiate any
valid obligation or liability.

Upon future indebtedness another limit was placed by
the constitution. First, it is provided that no county
shall in any manner create any indebtedness exceeding
two per centum on the assessed value of taxable property
in such county, as shown by the last general assessment,
preceding. Second, no debt in excess of the taxes for
the current year shall, in any manner, be created by any
county, unless the proposition to create such debt shall
have been submitted to a vote of the people and by them
approved. Without reference, now, to the classes of in-
debtedness included within these restrictions, if any dis-
tinction in that respect exists, it is apparent that, if the
indebtedness of a county has reached or exceeds two per
cent. on the assessed value of taxable property, such
county is powerless to create any debt in excess of the
taxes for the current year, either with or without a sub-
mission of the matter to a vote of the people or their
approval thereof. The absolute limit of lawful indebted-
ness being reached, it can not be exceeded. If, however,
the indebtedness of·a county thus restrained is less than
such two per centum, then there arises the further prohibi-
tion against the creation of any debt in excess of the taxes
for the current year without first submitting the same to a
vote of the people and thereby securing their approval;
but, in such case, if a proposition of that character is so
submitted to and approved by the people of the county,
then so far as concerns the constitutional provisions, such
county becomes authorized to create the additional debt,
if together with the existing indebtedness, it will not
exceed two per centum on the assessed value of the taxable

property within the county.    Thus the two sections (three and four of Article XVI) are harmonious, and their meaning readily discerned.    We apprehend no difficulty has arisen, in reference to the obvious purport of the constitution in this regard.    The intention evidently was, first to place an absolute limit upon the debt included in the provisions; and second, to forbid any such debt to be created in any year even within the absolute limit, if in excess of the taxes of the current year, without the sanction of the people of the county; and when the final limit was reached to require the affairs of the county to be conducted practically upon a cash basis.

The more serious question, however, is, What debts are included within these constitutional prohibitions?    It is insisted by counsel for defendants that they do not embrace any debts imposed by law, or such as may be termed "compulsory obligations," such as salaries of officers, which are definitely established by the legislature.    It is urged that the constitution requires the legislature to fix the amount of the salaries of county officers; and that when thus fixed the obligation is one which the county has not created; and it is contended that the restriction upon indebtedness applies only to such liabilities as have been incurred by the county authorities, voluntarily, and therefore that in determining whether the debt of a county exceeds the limit established by the constitution, the amount of the salaries of its officers and warrants outstanding to pay them, are not to be considered.    That a county in its corporate capacity, acting through its commissioners, are not prohibited from creating any indebtedness which exclusive of such imposed or compulsory obligations do not in the one case exceed the taxes for the current year, in the other two per centum upon the assessed value of the taxable property in the county.

We have approached this question with some hesitation, as it is impossible not to be impressed with its great significance.    The argument briefly adverted to is not without some force, and rests to some extent upon prece-

dent. Grant County v. Lake County, 17 Ore., 453; Lewis v. Widber, 99 Cal., 412. In the case of Grant County v. Lake County, supra, the supreme court of Oregon construing the provisions of the constitution of that State prohibiting a county from creating any debts or liabilities which shall singly or in the aggregate exceed the sum of $5,000, except to suppress insurrection or repel invasion, held that such inhibition did not imply that all debts and liabilities of a county over the sum named were necessarily obnoxious to the constitutional provisions. And in the course of the opinion the learned judge said: "Said provision, as I view it, only applies to debts and liabilities which a county, in its corporate character, and as an artificial person, voluntarily creates."

In Lewis v. Widber, 99 Cal., 412, the supreme court of California held, under a constitutional provision prohibiting any county from incurring in any manner or for any purpose any indebtedness or liability exceeding in any year the income and revenue provided for it for such year without the assent of two thirds of the qualified voters, that it referred only to an indebtedness or liability which the municipality has itself incurred; that it limited the power of the municipality as to any indebtedness which it has a discretion to incur, or not to incur; and the opinion is expressed by the court in that case that such is the clear intent and meaning of the provision.

The effect of that decision is that, if in expending the revenues of any year, a municipality in paying salaries of officers and other expenses, the latter including such as have been incurred through the discretion of the local authorities, such revenues are exhausted, salaries and other imposed obligations thereafter are valid, but no other liability can then be incurred; and what more than one half of the qualified voters are powerless to accomplish, the legislature, which might not be strongly representative of the particular municipality, may do; that the legislature is not amenable to the restrictive provisions of the constitution, and it may fasten numerous burdens in the way

of indebtedness upon the people, which the local authorities are without authority to incur unless two thirds of the voters shall acquiesce therein.

On the other hand, the courts of other States, and the supreme court of the United States, have reached a different conclusion under somewhat similar constitutional provisions. The constitution of Missouri provides that no county shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year without the assent of two thirds of the voters thereof, nor with such assent to an amount in the aggregate exceeding five per cent. on the value of the taxable property therein, etc.

In the case of Barnard v. Knox County, 105 Mo., 382; 13 L. R. A., 244, the county was sued upon a warrant issued for books and stationery bought for the use of the clerk of the county court, which the law required to be furnished. The defense was interposed that the debt was created after the county warrants exceeded the revenue of the year in question. Anticipating such defense the plaintiff had pleaded that the debt was created by law, and was not the act of the county authorities. The supreme court of that State had previously held that there was a distinction between compulsory obligations and debts voluntarily contracted by the county. (See Potter v. Douglas Co., 87 Mo., 240.) In the present case the former was expressly overruled, and a contrary opinion expressed. The court say, after quoting the constitutional provision : "The language just quoted is clear and explicit, and construes itself. It is broad and comprehensive as to the character of the indebtedness. It includes indebtedness created in any manner, or for any purpose. This strong and comprehensive language admits of no distinction between debts created by a county court, and debts created by law. In a sense all county debts are created by law; for the counties possess those powers and those only, which are conferred upon them by the consti-

tution and laws of the State.   While it is the duty of the
county court to care for paupers and insane persons, and
to build bridges and repair roads, still the county court is
governed by the statute in the performance of these du-
ties.   Debts incurred for such purposes may be called
debts created by law, as well as debts incurred by the
county clerk for books and stationery.''

Under a somewhat similar provision in the constitution
of Colorado prohibiting a county from becoming indebted,
the supreme court of the United States in Lake Co. v.
Rollins, 130 U. S., 662, in reversing the case of Rollins
v. Lake Co. 34, Fed. 845, in speaking upon this question
said: '' Neither can we assent to the proposition of the
court below that there is, as to this case, a difference
between indebtedness incurred by contracts of the county
and that form of debt denominated ' compulsory obliga-
tions.'   The compulsion was imposed by the legislature
of the State, even if it can be said correctly that the com-
pulsion was to incur debt; and the legislature could no
more impose it than the county could voluntarily assume
it, as against the disability of a constitutional prohibition.
Nor does the fact that the constitution provided for certain
county officers, and authorized the legislature to fix their
compensation and that of other officials, affect the ques-
tion.''   The action in which this opinion was delivered
was brought upon warrants issued in payment of fees of
witnesses, jurors, constables, and sheriff.   A clause in
the constitution of Illinois provides that '' no county,
city,'' etc., '' shall be allowed to become indebted in any
manner or for any purpose,'' etc.   In that State it is held
that in respect to such prohibition no distinction exists
between debts imposed by law, and those voluntarily
assumed, and that it makes no difference whether the
debts are incurred for necessary current expenses or not.

Prince v. Quincy, 105 Ill., 138–215; City of Spring-
field v. Edwards, 84 Ill., 626; Law v. The people ex
rel., 87 Ill., 385.   A similar construction is given to the
constitutional prohibition against county and municipal

indebtedness in Iowa. Council Bluffs v. Stewart, 51 Iowa, 385; Nat'l Bank v. Ind. School Dist. 39 Ia., 490; French v. City of Burlington, 42 Ia., 614; see also City of Guthrie v. New Vienna Bank (Okl.) 38 Pac., 4, where this question is fully and learnedly discussed.

We are not unmindful of the difference in language between the constitution of this State and that of some of the other States above referred to, but in respect to the present inquiry we fail to observe that the courts have drawn or indicated any distinction by reason of such difference in language. The object in either case is the limitation upon municipal indebtedness. To "become indebted" would seem to be no broader, nor to be any more restrictive, than to "create a debt." If a county is prohibited from "becoming indebted," we are not able to impart to that language any greater restriction upon the character of the indebtedness than if the prohibition is against the "creation of a debt." If the constitutional limitation operates to restrain the legislature from imposing obligations upon a county in excess of the limitation in the one case, so far as the mere difference in words is concerned, it would have the like effect in the other case. In the California and Oregon cases it does not appear that there was also a constitutional limitation upon the means of raising the annual revenue as is the case with us, which might aid or control the construction to be given to the debt limitation. Recurring to our own constitution, we are required to give that effect to its provisions which will harmonize all the parts bearing upon the question. An inspection of the limitations placed upon indebtedness and taxation, will demonstrate with satisfactory clearness the object, purpose, and intent which found expression in the provisions under considera tion. We have already adverted to the limitation placed by Congress upon municipal and county indebtedness which controlled while we remained in a territorial condition; and the fact that all debts which could during that period have been lawfully incurred were given recogni-

tion, and provision inserted in the constitution permitting the funding of the same.  That no indebtedness theretofore incurred exceeding four per centum (the congressional limitation), was thus recognized, clearly displaying a constitutional interpretation of the former limitation, embracing by necessary inference in such limitation all debts for salaries of officers, and other imposed or so-called compulsory obligations.  The constitution in the same section established a smaller limit upon future debts, reducing the limitation to two per centum; and as if to emphasize the intention to compel the strictest economy in the conduct of county and municipal affairs, further required that no debt in excess of the taxes for any year should be created without the approval of the people. Like restrictions are placed upon the creation of debts by the State.  In making provision for taxation, the constitution again resorts to the method of limitation.  For county revenue, for all purposes, except the payment of the public debts and interest thereon, the rate of taxation is limited to twelve mills.  If it is to be assumed that the debt limitation does not include any imposed liabilities, then the tax of twelve mills was merely to provide revenue to satisfy voluntary obligations, if they should amount to enough to consume all the funds raised by such levy for county revenue, and as the imposed obligations would be unpaid, a fund each year might then be provided by a tax without limit to pay them as a part of the public debt.  It must be manifest that salaries of public officers, the fees of witnesses and jurors, and such other expenses as may be said to be compulsory which relate to the ordinary management of county affairs are properly chargeable to and payable out of the general county revenue; and the conclusion is irresistible that in providing authority to tax for county revenue for all purposes, the section unequivocally comprehends the furnishing by that particular tax, of funds out of which all obligations ordinarily and properly chargeable to and payable out of the general annual county revenue shall be discharged;

unless, indeed, at the time any such obligations are contracted, other provisions are made in pursuance of the constitution and laws having specific reference to their future payment, in another manner and out of other funds, as might be the case of the creation of a debt in excess of the taxes in any year by consent of the people, the county having authority to incur such a liability. In such case it would not be intended to charge such debt to the ordinary county revenue. Salaries being unquestionably chargeable ordinarily to county revenue, and the tax for county revenue being a limited tax, it would seem to follow that the restriction upon incurring liabilities in excess of current taxes, includes such salaries and other claims against a county similarly situated. Had this not been the intention, provision would have surely been made for an additional tax, clearly expressed to pay such an important class of liabilities as salaries of officers. We are of the opinion that no county board, money being in the general fund, raised by the tax for general county revenue, ever hesitated to allow and pay salaries out of that fund. The limitation upon taxation, then, being upon the power to raise a fund out of which salaries are payable, must not the restriction upon the right to create debts in excess of the taxes include in the term "debts," all ordinary expense of the county inclusive of salaries? We think so. The evident object of all these provisions was an economical administration of public affairs, which is rendered more emphatic if possible by the maximum placed upon the salaries of the various county officials. (Art. XIV.)

It is assumed that the board of county commissioners constitutes the county, and that a liability imposed by law is not the creation of a debt by the county, not being within the discretion of the board. It is doubtful whether the board does constitute the county in the strict sense. As an official board it is charged with many duties and invested with numerous powers respecting the management of the ordinary and particularly the local affairs of

the county; this authority, however, is not exclusive in all matters; it is after all not boundless. Some of the important interests of a county are not permitted to be delegated to the board; viz., the matter of compensation to be paid to its public officials; others are under the control of independent officers, such as the collection of taxes, although the board may exercise a qualified supervision over the conduct of the officers charged with such duties. The Supreme Court of Indiana, in discussing the relation of the board to the county, said, "We know that comprehensive powers are conferred upon county commissioners. We know, too, that they are, in a sense, the county. But, after all, the county is no more than a public corporation created by statute, and deriving its power from the legislature. If a county is not given power to fix the fees of public officers by statute, it can possess no such power. It adds nothing, therefore, to the strength of appellee's position to affirm that the board of county commissioners is the county. But it is not strictly true that the board is the county. It can by no possibility be true that the board is the county; for in a just sense the inhabitants of the organized locality constitute the county. In strict accuracy, the commissioners are public officers representing the county, with powers and duties defined and prescribed by statute. The money which they control is the money of the county, the debts which they incur are the debts of the county, and the authority they exercise is such as resides in them as the officers and representatives of the county." Board of Com'rs. v. Barnes, 123 Ind., 403.

It may be equally as accurate to say that the legislature is the county, within the sphere of its control, as to make that application to the commissioners. In all matters of public concern it would seem appropriate to attach to the legislature the character of representatives of the county itself, whenever it assumes control of any of its interests, either in pursuance of constitutional requirement or otherwise, and that in doing so it acts for the counties in about

the same way that the local board does regarding those matters committed to the direction of the latter ; and, thus, if an obligation is imposed upon the county, it can not be said to be compulsory to any greater extent than if imposed by the county board. "Municipal corporations," and in this designation, so far as concerns this discussion, we include counties, "are of a twofold character, the one public, as regards the State at large, in so far as they are its agents in government; the other private, in so far as they are to provide the necessities and conveniences for the citizens." Davock v. Moore, (Mich.) 28 L. R. A., 783. In fixing salaries of county officers the legislature deals with counties as one of the agencies of government. In respect to its officers and the duties they are required to perform, the county is public in character.

The Supreme Court of the United States in Lake Co. v. Rollins, supra, indicated that from an accurate standpoint, the compulsion arising on account of imposed obligations, might not be to incur debt. It is evident that such compulsion in all cases does not result in a debt; and rather by way of suggestion than argument it may be said that the character of debt in excess of taxes as applied to unpaid salaries does not necessarily arise from the enactment of the law providing their amount and times of payment, but that it is possible the allowance of other claims within the discretionary control of the board and the use of funds in the general fund, or raised by the county revenue tax to satisfy such claims, may so deplete the treasury, as to create the inability to pay the salaries or other so-called imposed liabilities. Therefore, it may not be entirely accurate to say that the debt is created by the legislature, even if any distinction should be thought to exist respecting this matter within the terms of constitutional provision.

Before leaving this branch of the case, we call attention to some very pertinent remarks contained in the Address to the People, prepared by a committee of the constitutional convention, submitted to that body prior to its

adjournment, and embraced in the record as a part of its proceedings. We quote:

"The extravagance in the management of county affairs that has prevailed in the past has been circumscribed and rendered impossible. The restrictions upon taxation and the creation of public debts are such as to necessitate economy in public affairs and insure to the people the highest excellence in government for the least money."

This is strong language, and indicates that the purpose had been to place an additional restriction upon public indebtedness and taxation. Considering the limitations theretofore in force, the restraint upon taxation under existing territorial laws and the construction given to antecedent limitations, it is readily observed that if the construction given to the constitution by counsel for defendants is correct, the statements quoted from the address were but delusions, and that instead of having further circumscribed county extravagance, the limitations were practically removed. We are aware that the address is not to be entirely controlling of the construction; but in connection with past conditions and events, in the light of which constitutional provisions must be interpreted, such an address may very properly be resorted to as indicating somewhat the intent and object which caused the incorporation of disputed clauses into the fundamental law.

Whether the constitutional limitations include all obligations of whatever character, we can not in this case properly determine, and do not do so. It has been held by some eminent authorities that similar limitations do not cover a debt established against a municipality for a tort. (Bloomington v. Perdue, 99 Ill., 329; Chicago v. Sexton, 115 Ill., 230; Barth v. Des Moines, 38 Ia., 414.) It will be time enough, however, to decide that question when it is clearly presented in a proper case.

We are constrained to express as our opinion that the limitations upon county indebtedness include salaries of

county officials, and as well such obligations as are legal and valid and lawfully imposed under the legislation of 1893, respecting the payment of bounties for the destruction of certain predatory wild animals, as the same reasoning in the main applies with equal force to those liabilities. In this connection we expressly refrain from deciding or indicating any opinion whatever regarding the constitutionality of that legislation, or the validity of any claims arising thereunder, irrespective of questions touching the debt and tax limitations.

We are convinced that any different construction would be destructive of the plain import and object of the constitution, and would invite the most reckless and improvident administration of public affairs; and notwithstanding that the burdens of taxation are now conceived to be oppressive, temperate language would utterly fail to depict the condition which might result if the contention of counsel on behalf of the counties is sound. We do not desire to be understood as impugning in the least the motives, or the honesty, or patriotism of those at this time or heretofore in charge of county governments; we appreciate the many difficulties of their position, and are aware that in no public office is a higher degree of care, sagacity, and withal of integrity, required and often displayed than that through which the affairs of these local agencies of the State are administered. If inconveniences or consequences are to receive consideration, the hardships which may accompany an attempt to confine county indebtedness and taxation within constitutional boundaries can not approach in all that would be disastrous the effects that might follow if the construction otherwise insisted on was to prevail. Nevertheless the courts are powerless to alter the constitution, and should not attempt to evade its clear and imperative commands. As has been already suggested, the remedy, if any is deemed to be necessary, resides elsewhere.

We come now to a consideration of the judgments. Assuming that the claims upon which the judgments were

rendered were in excess of the limit, it is contended that
they can not be attacked collaterally by the plaintiff tax-
payer in this case; that they are conclusive as to the val-
idity of the debt, and, therefore, constitute a part of the
public debt of the county, for which a tax may be levied
irrespective of the limit as to taxation for county revenue.
The question, so far as this case is concerned, resolves
itself into this : Do judgments, assuming them to have
been rendered by a court of competent and general juris-
diction, having likewise jurisdiction of the parties, form a
part of that public debt of the county for which a levy
may be made to provide funds for their payment, although,
in fact, the warrants upon which they are founded were
issued for current expenses in excess of the taxes for the
current year, and in excess of the absolute constitutional
limit upon county indebtedness ? Is any inquiry into the
indebtedness back of and behind the judgments precluded
by them ? It is apparent that several questions are in-
volved in such an inquiry. Not only are we to determine
the meaning and scope of the words " public debt " as
used in the section of the constitution providing for county
taxation, but the effect of the judgments as to their con-
clusiveness or otherwise, and in respect to what matters
they are conclusive, if any, become matter for investiga-
tion.    Upon this branch of the case we are aided materi-
ally by the authorities.

After judgment upon a claim preferred against a county
or municipality, it has been frequently, and where that
question alone was involved, uniformly, held in manda-
mus proceedings to compel the levy of a tax to pay the
judgment, that an allegation that the debt upon which
the judgment was rendered had been created in excess of
the constitutional limit upon such indebtedness and was
illegal and void, constitutes no defense; that such defense
by the county is absolutely precluded by the judgment, as
it could have been interposed in the suit wherein the
judgment was obtained.    Howard v. City of Huron
(S. D.), 60 N. W., 803; State v. Gloyd (Wash.), 44

Pac., 103; U. S. v. Board of Auditors, 28 Fed., 407; U. S. v. New Orleans, 98 U. S., 395; People v. Board of Com'rs (Colo.), 42 Pac., 1032; Ætna Life Ins. Co. v. Lyon County, 44 Fed. R., 329.

And the citizen and taxpayer can not attack such a judgment any more than the county.

Clark v. Wolf, 29 Ia., 197; Freeman on Judgments, Sec. 178; 2 Black on Judgments, Sec. 584; Ashton v. City of Rochester, 133 N. Y., 187.

In the case of Clark v. Wolf, supra, the court said: "It must be, in the absence of fraud or collusion or the like, on the part of the municipal officers, that the legal liability of the county being once fixed by a valid judgment, the citizen, no more than the county, can afterward resist the collection of said judgment upon the want of power to contract the debt. That stage of the controversy is past." And in the same case those matters which may be contested by the taxpayer, even in case of a valid judgment, is also stated as follows: "If the officers shall attempt to make a levy not warranted by law (for instance, a greater per cent. than the law allows), or to collect the same in an illegal manner, or the like, these are questions between the citizen and the corporation, and do not touch either the validity of the debt or the correctness of the judgment which is intended to be satisfied." The distinction thus mentioned we regard as clearly existing. The validity of the debt was, or could have been, fully litigated in the suit in which the judgment was secured. That question is, therefore, absolutely concluded as against a collateral attack both as concerns the county, and a citizen or taxpayer thereof; but it does not necessarily follow that the county may levy, or the judgment creditor may insist that it shall levy a tax to pay the same not authorized by law. The cases holding that a power to contract a debt includes authority to pay it, and, where a tax is essential for such purpose, the authority and duty to tax, do not contravene this view; none of those cases, as I understand them, announce a contrary doctrine.

Having determined this much, the inquiry arises, how
far may a county go in its annual tax levy? For county
revenue for all purposes, the annual levy must be con-
fined within twelve mills, and this is inclusive of school
tax.  For the payment of its public debt and the inter-
est thereon, there is no limit.  The legislature of the
State, in amending the territorial statutes requiring the
annual levy, conformed them to the constitution, author-
izing an annual levy of not to exceed three mills for gen-
eral school purposes, and prescribing that an annual tax
should be levied for county revenue for all purposes; but
providing that the aggregate tax for county revenue, in-
cluding general school tax, should not exceed twelve mills
on the dollar (exclusive of State revenue), excepting from
such limitation the payment of the public debt and inter-
est thereon.  (Laws 1895, p. 237, Ch. 102.)  Prior to
the enactment just alluded to, the laws in force anterior
to statehood remained unaffected by any later legislation,
but were, of course, modified by the constitutional clauses
referred to.  Those earlier statutes prescribed certain rates
of taxation for various purposes connected with county
revenue, and placed a maximum limitation of sixteen
mills upon county taxation, which was held by this court
to be exclusive of the general school tax.  When the
constitution took effect, it immediately reduced the maxi-
mum limit to twelve mills, and included therein the gen-
eral school tax.

It is now urged that the judgments in question consti-
tute a part of the public debt of the county, to pay which
the county may levy a tax irrespective of the taxation for
county revenue; and our attention is directed to section
1798 of the Revised Statutes of 1887.  That section is
found in the chapter devoted to the powers and duties of
county commissioners, and was enacted prior to the
admission of the State, and continued in force unless in
conflict with the constitution.  It provides in substance
that when a judgment shall be rendered against the board
of county commissioners of any county, or against any

county officer, in an action prosecuted by or against him
or them in his or their name of office, where the same
shall be payable by the county, no execution shall issue
thereon, but the same shall be paid by a tax levied and
collected for that purpose as in the case of other county
charges, and when so collected shall be paid by the
county treasurer to the person to whom the same shall
be adjudged upon the delivery of a proper voucher there-
for.    The argument is that, as the judgments must be
paid by a tax, and they are part of the public debt, as to
which no limitation applies, the tax complained of is
legal, without regard to the nature of the claims merged
in the judgments.    On the other hand it is earnestly
insisted that the judgments do not form a part of the
public debt to pay which unlimited taxation is permitted.
Counsel for plaintiff contend, first, that bonded indebted-
ness alone is what is intended by the term "public debt"
in the section of the constitution referring to county
taxation, and it seems also to have been urged that no
indebtedness which did not exist at the time of the adop-
tion of the constitution is included.    We can not entirely
agree with the position taken by either counsel.    It is
obvious that debts incurred since the adoption of the con-
stitution, if lawfully existing, are not excluded.    To
exclude them would have the probable effect of prevent-
ing subsequently organized counties from paying their
legitimate public debt, although the same could not have
existed at the time the constitution was adopted.    There
are other reasons, however, which suggest the unsound-
ness of that contention.    We are further of the opinion
that the public debt which is excepted from the general
tax limitation is not confined to bonded indebtedness.
The same words "public debt" are used in Sec. 3 of
Art. XVI, permitting the bonding of the public debt of
the county existing at the time the constitution was
adopted; and it is clear that in the latter section the
words were not exclusive of indebtedness other than
bonded; but that they comprehended all manner of law-

ful debts, not exceeding the congressional limitation of four per cent.; and such has been the legislative and public construction placed upon that section. We are unable to attribute any narrower meaning to those words as used in Sec. 5 of Art. XV, relating to taxation. It is not confined to bonds, but may involve ordinary warrants, and other evidences of indebtedness if properly and lawfully issued, and may also include judgments, but not necessarily so. To illustrate: If a county's indebtedness is within the constitutional limitation, and in pursuance of law, it creates a debt, in excess of the current taxes by the consent and approval of the people, which, together with existing indebtedness, does not exceed the amount within which it may lawfully become indebted, such debt will not only be legal, but although it may be evidenced alone by warrants, will constitute a part of the public debt, and to pay the same a tax is permissible the same as in the case of bonded indebtedness. If judgments are rendered upon such warrants, or upon bonds, the debts themselves being lawful public debts of the county, the judgments will partake of the same character. On the contrary, in case warrants or other evidences of indebtedness are issued for ordinary current expenses, in excess of the taxes for the current year, without the consent or approval of the people, or in case the maximum limit has been reached, then with or without such approval, such indebtedness is clearly not a part of the public debt, but the same have been incurred for current expenses, which in the case of such a county can not in any event exceed the revenue for such year. There is no method by which such liabilities can have imparted to them voluntarily the character of public debts. If a judgment is obtained upon any such claim, the fact must yet remain that it represents a liability incurred for current expenses which should have been confined within the limit of the current taxes, to provide for the payment of which the constitution has afforded only a limited power of taxation.

The statutory provision with reference to the payment of a judgment by tax does not contemplate a tax in excess of the limitation, and did not permit a tax for that purpose in excess of the statutory limit anterior to the adoption of the constitution.    Much less could the legislature contravene the positive restrictions of the constitution. If the judgments are rendered upon claims which should have been paid out of the revenue raised by the tax which is confined to twelve mills, they must be paid if at all by a tax levied for such purpose, the aggregate tax for county revenue not to exceed the maximum limit.    The judgments being valid, the legality of the debt is settled until such judgments are set aside in some direct proceeding, and therefore within the limitation for county revenue a tax may be levied to pay the same.    This we apprehend to be the plain intent of the constitution.    Any other course would amount to an evasion of its terms.    A different construction would authorize such a management of county affairs as to exhaust the county revenue each year, to incur additional obligations ordinarily payable out of such revenue, permit prosecution of such claims to judgment, and the levy of a special tax to pay them; and this could be repeated annually, thus completely evading, if not operating to effectually nullify, the constitutional limitation.    The effect would be, as all must concede, to provide a greater revenue each year for current expenses than the constitution intended to authorize when it confined the same to twelve mills on the dollar.    This would accomplish by indirection, that which can not be done directly, which, generally at least, is not allowable.    The views thus expressed we believe to be in accord with the authorities.

As it is apparent that under the law requiring a judgment to be paid by tax, the latter must, if levied, be confined with other taxes within existing constitutional limitations, it necessarily follows, that to determine the limitation the claims placed in judgments must be inquired into.

The statute authorizes a tax to pay such judgments "as

in the case of other county charges." The funds to pay other county charges for ordinary expenses are raised by a limited tax. As the statute with respect to a judgment does not fix its class, and does not authorize a special tax irrespective of statutory or constitutional limitation, it is obvious that we must have recourse to the claims them-selves to determine to what class the judgment belongs, and whether any limit is imposed upon taxation, by which they may be enforced. The application of the converse of this proposition has not been infrequent. In the case of Ralls County Court v. United States, 105 U. S., 735, the court said: "While the coupons are merged in the judgment, they carried with them into the judg-ment all the remedies which in law formed a part of their contract obligations, and these remedies may still be en-forced in all appropriate ways, notwithstanding the change in the form of the debt." This language was used in a cause wherein it was sought by mandamus to compel the levy of a tax to pay a judgment. The opinion in that case also recognizes that courts are powerless to require a. tax to be levied even to pay a judgment in excess of the constitutional or legislative limitation upon the taxing power.

The same learned court in another case of like char-acter, in speaking upon this question, said · "So, too, if the municipality has no power, either by express grant or by implication, to raise money by taxation to pay the. bond, the holder can not require the municipal authorities. to levy a tax for that purpose. * * * We have no power by mandamus to compel a municipal corporation to levy a tax which the law does not authorize." United States v. Macon County, 99 U. S., 591.

"But mandamus will not lie to compel the levy of a. tax in excess of legal limitation." Cooley on Taxation, (2nd. Ed.) p. 738.

The following authorities are also in point: Browns-ville Taxing Dist. v. Loague, 129 U. S., 493; Arnold v. Hawkins, 95 Mo., 569; Black v. McGonigle, 103 Mo.,

192; Trull et al. v. Board of Com'rs., 72 N. C., 388; French et al. v. Board of Com'rs. 74 N. C., 692; Supervisors v. U. S., 85 U. S., 71; In re House Roll (Neb.), 48 N. W., 275; Clark, Dodge & Co. v. The City of Davenport, 14 Ia., 494; Ia. R. L. Co. v. C. of Sac, 39 Ia., 137; The Sterling School Furn. Co. v. Harvey et al., 45 Ia., 466; Shackelton v. Town of Gottenberg, 39 N. J. L., 660; Union Pacific R. R. Co. v. Board of Com'rs of Buffalo Co., 9 Neb., 449; Board of Com'rs of Osborne Co. v. Blake, 25 Kan., 247; State v. County of Marion, 21 Kan., 308; Board of Com'rs of Grand Co. v. King, 67 Fed., 202; Desty on Taxation, Sec. 41.

The case of Board of Com'rs of Osborne Co. v. Blake, supra, closely approaches the one at bar. The question there presented was whether a county board, after having levied the full amount of taxes for current expenses which it had by law any power to levy for that and previous years, could in a certain year levy an additional tax to pay a judgment rendered upon county warrants which had been previously issued to pay county current expenses for the same years. An express statutory provision required a judgment to be collected by tax as in case of other county charges, and the general limitations upon taxation were statutory instead of constitutional. The right to levy such a tax was denied. The Kansas Supreme Court saying: "The judgment shall be collected by means of a tax, in the same manner as other county charges are collected; and other county charges, when collected by means of a tax can be collected only by means of a limited tax. * * * A judgment rendered upon a claim against a county is simply one of the items which the county board takes into consideration in levying a tax for county charges, or for county expenses, or for current expenses. * * * All the statutes upon the subject seem to contemplate that the county board will not create, nor allow to be created, liabilities against the county faster than the legal and proper taxes will pay them. But suppose the county board should allow liabili-

ties to be thus created, then may all the creditors of the county convert their claims into judgments, and then compel the county board to levy county taxes vastly beyond the limits prescribed by Section 181. We think not."

The Supreme Court of the United States in Brownsville v. Loague, supra, held that it appearing from the petition that the bonds upon which the judgments were rendered were issued under an abrogated statute, and were consequently void, and that no power to tax to pay them was possessed by the taxing district, because such power was given only by the statute which had ceased to exist, mandamus to levy tax to pay the judgments would not be awarded.

The constitution excepts from the limit for taxation for county revenue purposes, not the payment of judgments, but the payment of the public debt. We are unable to class a judgment in all cases, irrespective of the nature of the obligation merged therein, as a public debt within the purview of the section of the constitution in question. The constitution clearly and forcibly distinguishes between those liabilities which are payable out of the general and ordinary revenue, and those for which provision must otherwise be made. It was not intended that a county powerless to legally contract debt which could not be paid out of the current revenue, because of its exhaustion in paying other expenses, could nevertheless by incurring such debts be permitted to employ unlimited taxation to defray those expenses which the constitution declares must be provided for by a limited tax.

Our attention has been called to the case of Thiess v. Hunton, before the Supreme Court of Idaho. Although the text of the decision in that case is not before us, extracts therefrom found in No. 14 of Vol. 1 of Selected Corporation Cases indicates that it was held that municipal indebtedness incurred during a given fiscal year can not be paid out of the income or revenue of any future year unless it be especially raised for the payment of such indebtedness, on the ground that the evident intent of the

constitution of that State was to make the revenue or income collected each year pay such year's indebtedness unless by the assent of two thirds of the qualified voters given as provided by law, other indebtedness was authorized.

It follows from what has been said that to raise a fund to pay salaries of county officers, and valid liabilities under the act with reference to bounties for the destruction of predatory wild animals, a tax in excess of twelve mills in any year for county revenue is not allowable, unless the debt therefor has been created in the manner provided in the constitution and any legislation conformable thereto, by a county possessing authority to incur such indebtedness.

The tenth certified question inquires if the board of county commissioners can not levy the district court tax for the maintenance of the court, in addition to the levy of twelve mills for county revenue.

What we have already said disposes of this inquiry. We fail to observe anything in the constitution or statutes which authorizes a levy for court expenses in excess and exclusive of the limited tax of twelve mills for county revenue.

With respect to the seventh question: We assume the damages to have been recovered in a proceeding to determine the compensation to be paid the land owner by reason of the exercise by the public of the right of eminent domain and the consequent taking of some of the land for public purposes. We regard this as not entirely free from doubt, but are inclined to the opinion that the damages thus assessed are payable out of the ordinary county revenue; and the result would be that if the county is unable to make the compensation it is powerless to complete the location of the road, which might result in the taking of private property without just compensation. If the damages are recovered as for a tort, another inquiry would arise which in this case we refrain from deciding.

The final question requiring the opinion of this court

affects the right of the board of county commissioners to confess and authorize a confession of judgments against the county.

A decision upon that question is not free from difficulty. We are practically without precedent, and resort must be had to our rather meager statutory provisions covering the subject of confession of judgments, as well as to those prescribing the duties and powers of the board of county commissioners.

"A person indebted, or against whom a cause of action exists, may *personally appear* in a court of competent jurisdiction and with the assent of the creditor or person having such cause of action, confess judgment, whereupon judgment shall be entered accordingly." Rev. Stat., 1887, Sec. 2668. In such case it is required that the debt or cause of action be stated in the judgment or writing to be filed as pleadings in other actions. (Sec. 2669.)

"An attorney who confesses judgment in any case shall, at the time of making such confession, produce the warrant of attorney for making the same, * * * and the original or a copy of the warrant shall be filed with the clerk." (Sec. 2671.) In the first case, under Sec. 2668, the debtor must *personally appear*.

The members of the board of county commissioners, individually, are not authorized to allow claims against the county. The board of commissioners *at any meeting* is given authority by statute to settle and allow all accounts against the county, and when so settled and allowed they may issue county orders therefor as provided by law. Rev. Stat., 1887, Sec. 1901. County orders are required to be signed by the chairman of the board and attested by the clerk, under the seal of the county. Sec. 1807, as amended, Chap. 33, Laws 1893. The meetings of the board are to be held in public (Sec. 1802). The authority over county affairs is thus vested in a board which is composed of three persons, although a majority constitute a quorum and may act. The board can only

act at a meeting of the board. Doubtless some detail matters may be attended to by one or more of the commissioners outside of a meeting by previous authority of the board, or such act may in some cases, perhaps, be ratified; but the allowance of claims must be at some time the act of the board as such. The county is constituted, by law, a body politic and corporate, and its powers as such corporate body are exercised by a board of county commissioners. Such powers are to be exercised and the duties devolving upon the board are to be discharged in the manner provided by law. We do not understand that the members composing the board are authorized to act as a board except when together in session. Their act is then not individual, but as a body, acting as a unit. Mc Cortle v. Bates, 29 O. St., 419–23 Am. R., 758. Whatever authority, if any, is possessed by the commissioners to confess a judgment against the body corporate and politic — the county — must reside in them as constituting a board, rather than as individual officers. As such a board, required to act as a body, we are unable to conceive that it can *personally appear* in court, as required by Section 2668. No statutory provision exists empowering one or more of the commissioners or any other official to so personally appear and in the name of the county enter confession of judgment. In the absence of some such provision, in the present condition of the law concerning judgments by confession, we are clearly of the opinion that the board of commissioners are without authority to personally appear in court and confess a judgment against the county. It would seem to follow, that, being powerless in that respect, the board, even as a body, can not authorize some person to do so. Such authorization could only be accomplished, however, by the execution of a warrant of attorney. No express power to execute such an instrument is granted by statute, nor do we observe any authority given the board from which such power can be implied.

In discussing this matter it is perhaps needless to state

that we refer only to confession of judgments in its strict sense; and do not refer to actions regularly brought, in which issues are duly framed, and upon hearing or trial, by admission of the lawful representative of the county in such suits, the court may be satisfied of the justness of the claim sued upon, and thereupon enter up judgment. Such an action is not dependent upon the statutes governing confession of judgments, but is, in reality, a judgment rendered upon trial and proof. We tender this explanation that any possible confusion respecting the decision of the court may be avoided. This, I believe, disposes of all the questions.

GROESBECK, C. J., and CONAWAY, J., concur.